**ACCARDO v. FONTENOT, Internal Revenue Collector. STRUVE v. SAME. CARLISI v. SAME.**

(District Court, E. D. Louisiana, New Orleans Division. December 23, 1920.)

Nos. 16402, 16403, 16406.

1. **Courts ⬦⟶297—District Court has jurisdiction of suits arising under revenue laws.**

Under Judicial Code, § 24, par. 5 (Comp. St. § 991[5]), the District Court has jurisdiction over all suits arising under the revenue laws, regardless of the amount.

2. **Courts ⬦⟶284—Suit "arises under law of the United States" whenever its solution depends on the construction of that law.**

A suit arises under law of the United States whenever its correct solution depends on the construction of that law, and the rights set up by a party may be defeated by one construction or sustained by another.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Arise—Arising.]

3. **Internal revenue ⬦⟶45—Tax provisions in National Prohibition Act are penalties; hence enforcement may be enjoined.**

While Congress may impose taxes for the purposes of regulating any business or occupation, if there is the slightest color of raising revenue, and these taxes may be so excessive as to actually prohibit, the so-called taxes or penalties prescribed by National Prohibition Act, tit. 2, § 35, on account of the sale or manufacture of intoxicants, are merely additional penalties for violation of a criminal statute, as the payment of the tax cannot, as is recognized by the section, legalize the manufacture and sale of intoxicants; hence a suit to enjoin the collection of such penalties does not fall within Rev. St. § 3224 (Comp. St. § 5947), declaring that no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court.

4. **Internal revenue ⬦⟶45—Provisions as to destraint under revenue law do not apply to penal provisions of National Prohibition Act.**

The provisions of internal revenue laws (Rev. St. § 3172 et seq. [Comp. St. § 5895 et seq.]) relative to the assessment and summary collection by distraint of internal revenue taxes, are not applicable to the assessment and collection of the taxes prescribed by National Prohibition Act, tit. 2, § 35, as additional penalties for violation; for otherwise violators would practically be required to file returns showing their violations, and the whole enforcement of the law would have been placed in the hands of executive officers, depriving offenders of the right to jury trial.

5. **Evidence ⬦⟶47—Judicial notice of instructions of Internal Revenue Department.**

The courts will take judicial notice of instructions of the Internal Revenue Department relative to the collection of additional penalties for violation of the National Prohibition Act.

6. **Internal revenue ⬦⟶45—Collection of penalties prescribed by National Prohibition Act should be enjoined, where guilt of defendants was not established.**

In view of the instructions issued by the Internal Revenue Department that no suit for recovery of internal revenue taxes or penalties, including those under the National Prohibition Act, may be maintained until appeal shall have been made to the Commissioner of Internal Revenue, as well as the statement that in prohibition cases the enforcement of the tax may be more effective than the imposition of criminal liabilities, collection of such of the taxes and penalties prescribed by National Prohibition Act, tit. 2, § 35, may be enjoined, where it appeared an appeal or plea of abatement would be unavailing, and there was an attempt to en-

⬦⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

force such taxes and penalties against several defendants, one of whom had been acquitted of the charge of unlawful possession of intoxicants, which carries no penalty, another never brought to trial, and the third not charged with any offense, for it is obvious from the instructions issued that the Internal Revenue Department is seeking to administer the law without reference to the courts.

In Equity. Bills by Tom Accardo, by William Struve, and by Sam M. Carlisi against Rufus W. Fontenot, Collector of Internal Revenue, to enjoin the collection of taxes and penalties assessed by the Commissioner of Internal Revenue under National Prohibition Act, tit. 2, § 35. Preliminary injunctions issued.

Hugh M. Wilkinson, of New Orleans, La., for plaintiffs Accardo and Struve.

Jones T. Prowell, of New Orleans, La., for plaintiff Carlisi.

Henry Mooney, U. S. Atty., of New Orleans, La., for defendant.

FOSTER, District Judge. In these three cases bills in equity were filed against the collector of internal revenue to enjoin the collection of certain taxes and penalties assessed against the plaintiffs by the Commissioner of Internal Revenue under the provisions of section 35, tit. 2, of the National Prohibition Act. With slight differences, they present the same state of facts. On a rule to show cause why a preliminary injunction should not issue they have been submitted on one and the same argument.

The material facts, as appearing by the bills and supplemental bills, and not denied, are these:

## Accardo Case.

On August 28, 1920, plaintiff's premises were raided by prohibition officers and a quantity of wine destroyed by them, and other liquors in his possession seized and carried away. An information was subsequently filed against him, charging him with unlawful possession of the said wine and liquors, but not with having made an illegal sale. A tax and penalties were assessed against him by the Commissioner of Internal Revenue, under the provisions of section 35, tit. 2, of the National Prohibition Act, amounting to $557.29, and written demand was made for its payment by the collector on October 29th. On his refusal to pay, after 10 days, a penalty of 5 per cent. was added and a second demand in writing made. On December 2, 1920, he was tried by a jury and acquitted. Notwithstanding his acquittal, the collector is proceeding with a writ of distraint, and proposes to seize his property to enforce collection of the tax and penalties assessed.

## Struve Case.

Plaintiff was arrested on a warrant from a United States commissioner, based on an affidavit charging an illegal sale of liquor. He gave bond of $1,000 for his appearance before the commissioner, but no hearing has been held, no indictment returned, and no information has been filed by the district attorney. A tax and penalties were assessed against him, totaling $559.66, practically the same as in the Accardo Case. To prevent a seizure of his property, plaintiff gave

bond in the sum of $1,025, which was accepted by the collector. Thereafter a warrant of distraint was issued by the collector, under which plaintiff's bank account was seized and $34 appropriated, and the collector threatens to proceed against the bond for the balance of the assessment.

### Carlisi Case.

There was a seizure of liquor and a subsequent assessment of the tax and penalties, but no criminal charge of any kind has been made, although collection by distraint is threatened.

In none of these cases was the plaintiff required to make, or given the opportunity of making, a return, nor was notice of any kind given before the assessment was made.

The United States attorney has filed motions to dismiss the bills, on the ground they are without equity, and relies on section 3224, R. S. (Comp. St. § 5947), as depriving the court of jurisdiction. No objection to the jurisdiction of the court as such is urged, but that question may be noticed incidentally.

[1, 2] The court has jurisdiction of all suits arising under the revenue laws, regardless of amount. Judicial Code, § 24, par. 5 (Comp. St. § 991[5]); Downes v. Bidwell, 182 U. S. 244, 21 Sup. Ct. 770, 45 L. Ed. 1088. A suit arises under a law of the United States whenever its correct solution depends on the construction of that law, and the right set up by a party may be defeated by one construction or sustained by the other. Gold Washing & Water Co. v. Keyes, 96 U. S. 199, 24 L. Ed. 656.

[3] The correct solution of these cases requires a construction of the internal revenue laws, in connection with section 35, tit. 2, of the National Prohibition Act, which itself must be considered a revenue law, if the contention of the government is to prevail.

Section 3224, R. S., provides:

"No suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court."

### Section 35 of title 2 of the National Prohibition Act provides:

"All provisions of law that are inconsistent with this act are repealed only to the extent of such inconsistency and the regulations herein provided for the manufacture or traffic in intoxicating liquor shall be construed as in addition to existing laws. This act shall not relieve any one from paying any taxes or other charges imposed upon the manufacture or traffic in such liquor. No liquor revenue stamps or tax receipts for any illegal manufacture or sale shall be issued in advance, but upon evidence of such illegal manufacture or sale a tax shall be assessed against, and collected from, the person responsible for such illegal manufacture or sale in double the amount now provided by law, with an additional penalty of $500 on retail dealers and $1,000 on manufacturers. The payment of such tax or penalty shall give no right to engage in the manufacture or sale of such liquor, or relieve any one from criminal liability, nor shall this act relieve any person from any liability, civil or criminal, heretofore or hereafter incurred under existing laws.

"The Commissioner, with the approval of the Secretary of the Treasury, may compromise any civil cause arising under this title before bringing action in court; and with the approval of the Attorney General he may compromise any such cause after action thereon has been commenced."

Serious questions involving the construction of these laws are presented by the cases at bar.

(1) Are the taxes (so called) and the penalties prescribed by section 35, tit. 2, of the National Prohibition Act, taxes within the meaning of R. S. § 3224.

(2) Are the provisions of the internal revenue laws (R. S. § 3172 et seq. [Comp. St. § 5895 et seq.]), relative to the assessment and summary collection of internal revenue taxes applicable to the assessment and collection of the taxes and penalties prescribed by section 35, tit. 2, of the National Prohibition Act.

Taking up the first question, it is well settled that Congress may impose taxes for the purpose of regulating any business or occupation, if there is the slightest color of raising revenue, and these taxes may be so excessive as to actually prohibit. An example of this is found in the Act of January 17, 1914 (Comp. St. §§ 6287a–6287f), imposing a tax of $300 per pound on the manufacture in the United States of smoking opium. Nevertheless, if any one chose to pay the tax, he could indulge in the business. So with the internal revenue taxes. Although one might be guilty of a criminal offense by not paying his taxes promptly, still the tax is primarily intended to raise revenue.

On the other hand, the taxes and penalties provided for by section 35, tit. 2, of the National Prohibition Act, lack every fundamental element of a tax. The manufacture and sale of intoxicating liquor for beverage purposes are absolutely prohibited by the Eighteenth Amendment to the Constitution and the National Prohibition Act. Payment of the so-called taxes could not legalize either transaction, and the section so states. There is not the slightest pretense of raising revenue, and it should not be presumed that Congress intended to levy a tax for the purpose of prohibition on something already prohibited. It is also exceedingly doubtful that it could do so. Cooley on Taxation (3d Ed.) p. 12 et seq., verbo "Maxims of Policy."

It is evident the so-called taxes and penalties provided by section 35, tit. 2, of the National Prohibition Act, are simply additional penalties imposed for the violation of a criminal statute, and section 3224, R. S., is no bar to relief in equity in a proper case. See Dodge v. Brady, 240 U. S. 122, 36 Sup. Ct. 277, 60 L. Ed. 560.

[4] On the second question the material provisions of the internal revenue laws (R. S. § 3172 et seq.) relative to the assessment and summary collection of internal revenue taxes are as follows: The collector is required to canvas his district and make a list of all persons liable to the tax. It is also the duty of all persons so liable to make returns under oath to the collector at stated times. If the person liable fails to make a return, the collector must summon him. If he still refuses, he may be interrogated, and in that event, or if he fails to appear, the collector can make a return for him. All this provides notice before assessment, and makes the subsequent summary collection due process of law. It is only after these proceedings that the assessment is made by the Commissioner on the return made by the party taxed, or by the collector for him.

Manifestly these laws could not be applicable to the collection of

penalties under section 35, tit. 2, of the National Prohibition Act. To compel a man to file a return showing him to be guilty of a crime, or to require him to answer interrogatories to the same effect, would be to compel him to testify against himself, in violation of his constitutional privilege. Formerly, under the revenue laws, he was protected by a liberal construction of R. S. § 860; but that section was repealed by the act of May 7, 1910 (36 Stat. p. 352), and the Commissioner of Internal Revenue evidently so regards them, as the assessment in the cases at bar were made entirely without notice, presumably on the report of the prohibition officers.

It is clear to my mind that Congress did not intend the summary and drastic process of distraint to be used for the collection of the penalties imposed by section 35, tit. 2, of the National Prohibition Act. As well might they have attempted to put the whole enforcement of the law in the hands of executive officers, and so deprive offenders of the right of trial by jury entirely.

[5, 6] There remains the question raised by the United States that the bill is without equity. Under the internal revenue laws it may be conceded even an illegal assessment could not be enjoined, and a party was compelled to pay the tax, appeal to the Commissioner, and then sue at law to recover back the amount paid. Without an appeal, generally, but not always, no action would lie. But he could ask for abatement before payment.

In these cases I am convinced an appeal would have been useless, and a plea for abatement would not have been considered. In instruction No. 12 issued by the Internal Revenue Department October 1, 1920, of which I take notice, at page 21, these instructions are given to United States attorneys:

"No suit for the recovery of internal revenue taxes or penalties, including those collected under section 35 of title 2 of the National Prohibition Act, may be maintained until appeal shall have been made to the Commissioner of Internal Revenue. The ground should be taken that an appeal or claim for refund is necessary, and that a claim for abatement of a tax before payment is insufficient."

And again at page 42, instructions to internal revenue officers:

"In making reports in prohibition cases the tax and assessable penalty imposed by section 35 of title 2 of the National Prohibition Act should not be overlooked. It will often prove more effective to suppress violations of the law than the actual criminal liabilities imposed."

By this it is clear that the policy of the Internal Revenue Department is to take the punishment of offenders into its own hands, in preference to the courts, and the cases before me well illustrate to what extremes of unfairness such a policy may lead. No charge at all against one plaintiff; another charged with only unlawful possession, which carries no penalty, under section 35, tit. 2, and an acquittal shown; the other charged with selling unlawfully, an ample bond given to secure payment of the assessment, but no trial had. Acquittal in all of these cases would be a bar to the collection of the penalties in a civil suit. If an ex parte report of a revenue or prohibition officer is all the evidence required of illegal sale or manufacture,

which is very doubtful, there is a strong presumption in these cases that the prohibition officers were not in possession of sufficient evidence of even probable cause on which to base such report.

Yet payment is demanded in each case, and collection is sought to be enforced by the drastic procedure of distraint. No doubt the Commissioner of Internal Revenue considered himself amply justified in making the assessment, and the collector of internal revenue should not be criticized or censured for attempting to make collection. His duties are purely ministerial, and he is vested with no discretion, once the assessment is placed in his hands. But the system is all wrong, and tends to work great hardship and injustice to the individual, however desirable from an administrative viewpoint it may be.

I think the bills teem with equity, and present such extraordinary facts as to warrant the issuance of preliminary injunctions. It is so ordered.